Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT
### for the

District of  Boston, Massachusetts

Eastern    Division

|  |  |
|---|---|
| Annie Niquet, Melanie Petticrew a/n/f for Z.N.<br><br>_Plaintiff(s)_<br>_(Write the full name of each plaintiff who is filing this complaint._<br>_If the names of all the plaintiffs cannot fit in the space above,_<br>_please write "see attached" in the space and attach an additional_<br>_page with the full list of names.)_<br>**–v–**<br><br>Massachusetts Department of Children and Families,<br>Arlington Area Cryselle Greenaway, Steven Grady,<br>Brian Guzzi<br><br>_Defendant(s)_<br>_(Write the full name of each defendant who is being sued.  If the_<br>_names of all the defendants cannot fit in the space above, please_<br>_write "see attached" in the space and attach an additional page_<br>_with the full list of names.  Do not include addresses here.)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____

_(to be filled in by the Clerk's Office)_

Jury Trial:  _(check one)_   ☒ Yes   ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non–Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non−Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Annie Niquet, Melanie Petticrew a/n/f for Z.N. |
| Address | 138 E. 12300 S. #617 |

| Draper | UT | 84020 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Salt Lake |
| Telephone Number | 385-350-2190 |
| E-Mail Address | zensdays@gmail.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Massachusetts Department of Children and Families |
| Job or Title *(if known)* | Arlington Area Office |
| Address | 30 Mystic St |

| Arlington | ᴺ  MA | 02474 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Middlesex |
| Telephone Number | 7816418500 |
| E-Mail Address *(if known)* | |

☐ Individual capacity   ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Cryselle Greenaway |
| Job or Title *(if known)* | DCF Investigator |
| Address | 30 Mystic St. |

| Arlington | MA | 02474 |
|---|---|---|
| *City* | *State* | *Zip Code* |

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

| County | Middlesex |
|---|---|
| Telephone Number | 7816418500 |
| E-Mail Address *(if known)* | cryselle.greenaway@state.ma.us |

☐ Individual capacity   ☐ Official capacity

**Defendant No. 3**

Name                                    Steven Grady

Job or Title *(if known)*               DCF Caseworker

Address                                 30 Mystic St.

| Arlington | MA | 02474 |
|---|---|---|
| *City* | *State* | *Zip Code* |

County                                  Middlesex

Telephone Number                        7816418500

E-Mail Address *(if known)*             steven.grady@state.ma.us

☐ Individual capacity   ☐ Official capacity

**Defendant No. 4**

Name                                    Brian Guzzi

Job or Title *(if known)*               DCF Intake Worker

Address                                 30 Mystic St.

| Arlington | MA | 02474 |
|---|---|---|
| *City* | *State* | *Zip Code* |

County                                  Middlesex

Telephone Number                        7816418500

E-Mail Address *(if known)*

☐ Individual capacity   ☐ Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

## II. JURISDICTION

This Court has Jurisdiction as 28 U.S. Code § 1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Court has Jurisdiction also as 28 U.S. Code § 1343 states that "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States. This Court has Jurisdiction over the matter which took place in this district  and has Jurisdiction over  Massachusetts Department of Children and Families  (DCF) Arlington area office and employees, defendants. In the United States, 42 U.S.C. § 1983 provides a mechanism by which those who have had their constitutional rights violated may seek a remedy against individual state actors. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.  Z.N. and I are entitled to relief for the suffering and separation that occurred unnecessarily as a result of DCF's overreaction, unwarranted and unlawful involvement and mistaken deprivation without due process.

## III. INTRODUCTION

DCF Arlington Area Office and employees acted against the Color of the Law when violating our Civil Rights and Federally granted rights and they did so while violating Due Process rights. As a result a No Contact order was issued for 'neglect', my child was seized from me at Boston

Logan Airport and returned to her Father who had unlawfully kept her from me for approx 70 days immediately prior to our Court date the day before. I was not limited by supervised visits, I had given notice to the Father for my intended parent time and I was simply exercising my parent rights as per our Court Order when DCF unlawfully interfered, stopping my parent time. This was not a DCF 'removal' but a seizure of my child to cease my parent time. Upon a DCF Fair Hearing they "Reversed" their "neglect" decision. Not at any point was I endangering my child, nor was that the allegation, but I was served with a No Contact Order which took 395 days to rectify partially with the investigations and Court hearing processes. My 4 year old at the time, Z.N., had been missing me for about 70 days immediately prior to this seizure performed by DCF. It was a total of 504 days she was unlawfully separated from me before I picked her up for the first time October 29, 2020 after the Court issued its initial steps to reunite us and Ordered to resume parent time. The Court, in its Order, acknowledged "DCF mistakes" and the "misinterpretation of another State's Court Order" as the reasons for the separation. The Middlesex Family Probate Court (J. McSweeny) made his "initial steps" to "resume and strengthen the relationship between Mother and Child." (See Court Order September 17, 2020) I received this Order by US Mail on 10/14/20 and provided the Court required 14 day notice of my intent to pick up Z.N. for the first time in 504 days (except for the attempt that was interfered with by DCF on August 23, 2019) There were 418 days of that 504 days of No Contact until I received that Order and was able to call her. The event was shocking for us both and the allegation of neglect was later Reversed by DCF, there was no reason for the separation. We were deprived of our civil rights as well as due process. I was not given a chance to be heard, provide evidence prior to being served on August 23, 2019.  DCF acting agent Chryselle Greenaway told me at the airport at the time of seizure this was a Court issue and the Court

already signed the No Contact so all I could do was go to Court. In fact, upon receiving DCF records it became clear to me that DCF knew in advance no supervised visits were issued, this is documented in their records. DCF also had made calls to both the Montana and Massachusetts Court Clerks and received the clarification that no Order for supervised visits was issued, no future hearing was scheduled and Montana told Mr. Brian Guzzi, intake worker for DCF that he needed to get an Attorney. In fact Montana did not tell him they were going to issue a warrant for my arrest but Mr. Guzzi, upon hearing from both Courts, decided to escalate Z.N.'s case to "Emergency Response" right after gathering this info from both Courts. Soon after that, the District Attorney was contacted by DCF and was told by DCF that Montana was issuing a warrant for my arrest, which was not true. No warrant was ever threatened, nor served. A mental illness was also alleged by DCF and this fabrication and false statement to the D.A. alarmed along with the fabrication that I had taken off with my child unsupervised. Although no endangerment was alleged, I was treated like a dangerous parent and not allowed so much as a phone call with her for 418 days, my child and I have suffered unnecessarily. Due process was denied from the beginning and has led to long term suffering as unraveling the actions of DCF continues. The Court has only made those 'initial steps' and the Guardian Ad Litem lengthy investigation delayed our case substantially. The fabricated records of DCF which allege all of the above still stand and they have stated they cannot correct their record. This negatively impacted the Guardian Ad Litem's investigation and report. I have asked DCF in writing to rectify in some manner or make note in Z.N.s records to correct its damaging mistakes which continue to impact my time with my daughter. Without a Court injunction or restraining order they will continue representing that their record is correct and I will remain on the hook for being 'mentally ill' while a mental illness is non-existent and I have 3 licensed mental health

professionals in 3 States who have corroborated this. I have offered DCF many times the Mental

Health Assessment performed by a Licensed Mental Health Professional which concludes no

illness exists, no follow up is needed and DCF has refused to accept this on multiple occasions.

At the August 30, 2019 Investigation Interview I had with Ms. Chryselle Greenaway, I offered

her these records and she rejected them while challenging the credibility of the Licensed Mental

Health Professional who performed the test, stating it could have been someone I know, and also

stating that the Courts if they order one will have me complete one in Massachusetts.

Simultaneously, DCF has decided to pronounce me 'severely mentally ill' within their records

multiple times while refusing to accept evidence from a Licensed Mental Health Professional in

the State where I reside. This is an issue because it unlawfully deprives me of rights,  challenges

my federally protected parent rights, violates due process, adds to the suffering  my daughter and

I have endured and continues to endure since they refuse to allow evidence of any sort. DCF, if

truly concerned, could have issued recommendations for mental health evaluations, however

they did not.  In fact, they did not provide any recommendations, they did not provide a case

plan, they simply closed the case early December 2019 and without any apparent concern. DCF's

inaccurate record continues to impact my and Z.N.'s rights in unreasonable ways.  It is not a

choice to represent myself and Z.N. myself but I have had 7 Attorneys in 3 states in 4 years to

manage her Father's refusal to obey Court orders, perjury, and multiple vexatious court actions

and pleadings.  I am financially and emotionally devastated and my daughter has suffered

immensely unnecessarily for the past nearly 3 years with the unlawful involvement of DCF.

**DCF's actions 8/23/19, 12/3/2019, 12/23/2019, 1/2020, 5/2021, 3/2022, 6/24/22** have continued

to prolong justice, prevent due process, interfere with Z.N. and my Federally protected right to

be together, our Civil Rights, and Massachusetts Civil Rights.  Their continued actions have been

7

detrimental as the Court has taken what DCF says as truth. This is outlined below in the children in the home of Z.N. were removed by Emergency around midnight from her Father's home due to his abuse of an Autisitc child and other safety complaints. A Juvenile Court Judge from this District, Framingham Division ordered the Father not be around those 5 children who were removed, yet Z.N. was left behind and in his care without rights to have a DCF investigation. In fact, the Conditional Custody Order issued by that Judge included that Custody would go back to the State if Z.N.s Father had any contact with any of those 5 children. This seems quite serious and it is, but DCF has refused to investigate Z.N.s well being in this situation. Z.N. was present during the abuse incidents, and multiple Police calls and involvement that week of the Emergency Removal. DCF's actions and inactions have both prompted confusion, multiple lengthy investigations & court hearings, and have challenged the integrity of the Court as well as deprived Z.N. and my rights. claim but without a Court Order or Injunction to prevent further damage, DCF will continue to violate Z.N.'s and my Civil Rights. Most recently they denied Z.N. a DCF investigation when 5 children in the home of Z.N.'s Father were removed under DCF Emergency Removal around midnight 5/21/21. Z.N.'s Father was the perpetrator. DCF Arlington refused to open a DCF case for Z.N. denying her rights to an investigation under these extreme and disturbing circumstances.

## IV. STATEMENT OF CLAIM

1.  On 8/23/19 I was exercising my parent rights with Z.N, a right and privilege protected by the Constitution, laws of the Commonwealth of Massachusetts Rights, and granted also by a Montana Court Order. The Full Faith and Credit Clause of the Constitution protects the Orders of other States and it is expected to be honored in all States. In

that Order I was granted Joint Legal Custody. Our rights were interfered with and denied for 418 days as a result of

a.   The defendant interfered with and denied the exercise or enjoyment of that legally protected rights of Z.N. and me. DCF alleged the Father had Sole Custody and the Court ended up "recognizing that Montana gave the Father Sole Custody" when this was not true. DCF Alleged that I am 'severely mentally ill' and this is not true, there is no evidence of this, nor has DCF been willing to accept the evidence that I do not have a mental illness. They have refused multiple times including but not limited to: 6/2019, 8/30/19 and at Court around 9/17/20, the Voluntary Mental Health Assessment results I have offered them. Simultaneously, they continue to allege 'severe mental illness'. They also alleged I had taken off with my child "unsupervised", while knowing the Court did not issue supervised visits to me.

The defendant also interfered with our rights by misrepresenting this information to the D.A. and I was served with an order of No Contact by State Police and DCF on 8/23/19.

b. We were forced by seizure and a No Contact Order and without a chance to be heard.

c.The defendant did so wilfully.

d. I am not on any Child Abuse Registry list as a child abuser, I have never been declared a danger to my child, even DCF Arlington's neglect allegation was Reversed by them. I have been treated like a child abuser, have endured unnecessary deprivation of rights, deprived of due process and and this has impacted me in many ways, caused humiliation, heavy long term grief and undue emotional distress.

2.  Z.N. was unlawfully and unnecessarily seized at the Boston Logan Airport by DCF
Arlington August 23, 2019  and a No Contact Order was served to me for allegations of
'neglect'. No endangerment nor mistreatment was alleged against me.

    a.  Unreasonable deprivation of rights, DCF was acting under the Color of the Law

    b.  A No Contact Order can be issued only if imminent danger or harm, this was not
the allegation. The Allegation was 'neglect' and that was 'Reversed' by DCF
through a Fair Hearing held November 2019, which was concluded June 2020.

    c.   I was exercising my parent time as per our Montana Court Orders, Z.N. are
granted the privilege to be together unsupervised and this privilege is protected by
the Constitution and laws of the Commonwealth of Massachusetts.

    d.   That the defendants deprived us of our rights to be together by pursuing and
serving a No Contact Order 8/23/19

    e.   The defendants deprived us of due process rights,


3.  DCF did not make a removal but they had seized Z.N. and took her back to her Father. They
did so without any evidence, without a hearing, without my chance to be heard.

    f.   Z.N. and I had a legal Court granted rights to be together and these rights are
protected by Federal laws, the Constitution and the 4th Amendment protects
against unlawful seizure.

    g.   The Defendants violated our rights and ability to exercise and enjoy them and

    h.   They did so with force, by serving a No Contact Order and seizing Z.N. in the
presence of  State Police at the Boston Logan Airport.

    i.   Evidence in the DCF records of Z.N. illustrate they did so willfully, knowing that no supervised visits were ordered.  This violation of law and rights was avoidable. Without evidence and without a hearing, DCF obtained a No Contact Order ex-parte. I was not given a chance to be heard.

    j.   I had a legal right to be heard, this right is protected by the 14th Amendment, Due Process, to be treated fairly and I was not.  I was not provided with any opportunity to present my side before I was served with a No Contact Order. Utah had jurisdiction at the time this occurred and Massachusetts right to exercise emergency jurisdiction is reserved for extraordinary circumstances. See State in Interest of D.S.K., 792 P.2d 118, 127 (Utah Ct. App. 1990) ("cases of neglect where the harm is immediate or imminent"). Such an emergency also requires support from independent evidence. See also Roberts v. Dist. Court of Larimer Cty., 198 Colo. 79, 82, n.1 (1979) ("[i]f a real emergency exists, then there should certainly be some evidence available to demonstrate the gravity of the situation; E. g., medical reports, professional testimony, etc.); see also Woodhouse v. Dist. Court In & For Seventeenth Judicial Dist., 196 Colo. 558, 561 (1978) ("...self-serving statements that his child appeared unwell are not enough to confer jurisdiction...")

4. I was in the process of exercising my parental time, flying to my home in Utah with Z.N. as per our Court Order. Z.N. was 4 years old at the time.  The allegation originating from the Father that I had 'supervised visits' was false. DCF corroborated with the Court prior to obtaining this No Contact Order that No supervised visits were granted.  They

knew the Father's DCF report waas therefore false. They also knew I was not ordered supervised visits yet they proceeded to violate my and Z.N. 's Civil Rights and Federal Rights despite knowing. I explained to DCF at the airport that I've not ever been issued supervised visits and that I had a Court Order to take my parents' time at my home in Utah. Ms. Cryselle Greenaway responded that I could take it up with the Court. I was denied Due Process. It was 395 days and a total of 418 days of unlawful unnecessary separation and No Contact before the Middlesex Family and Probate Court issued an order recognizing "DCF mistakes" and the "misinterpretation of another State's Court Order".

   a.   All of the above occurred while Z.N. and I are victims, her Father was never investigated by DCF for his False report to them.

   b.   Newton PD investigated the Fathers False DCF and False Police reports later and made a referral to the DA.

   c.   DCF has willfully ignored the fathers willful infliction of emotional harm to Z.N. by causing such lengthy deprivation and interference in our time. This is child abuse my Massachusetts definition, yet DCF was aware, and helped further the Father's efforts to sever our relationship.


5. Utah had Jurisdiction over Z.N. at the time this occurred when Massachusetts took Emergency Jurisdiction on 8/23/19. No evidence existed for such an emergency and no emergency was alleged where immediate or imminent harm or endangerment was accused. The allegations were 'neglect', and later reversed. The exercise of emergency jurisdiction is reserved for extraordinary circumstances. See State in Interest of D.S.K.,

792 P.2d 118, 127 (Utah Ct. App. 1990) ("cases of neglect where the harm is immediate

or imminent"). Such an emergency also requires support from independent evidence. See

also Roberts v. Dist. Court of Larimer Cty., 198 Colo. 79, 82, n.1 (1979) ("[i]f a real

emergency exists, then there should certainly be some evidence available to demonstrate

the gravity of the situation; E. g., medical reports, professional testimony, etc.); see also

Woodhouse v. Dist. Court In & For Seventeenth Judicial Dist., 196 Colo. 558, 561 (1978)

("...self-serving statements that his child appeared unwell are not enough to confer

jurisdiction...")

    a.  This DCF action took place in this Jurisdiction, giving this Court Jurisdiction to

        hear the matter as this Court has   (1) jurisdiction over the offense, (2) personal

        jurisdiction over the defendants

    b.  DCF willfully alleged an Emergency that did not exist which caused an interstate

        Court issue. Later they reversed their allegation, no such emergency existed.

    c.  There is now a 3rd State, MA, involved in our already complicated Custody Case.

        This Loss of consortium, added stress, emotional distress, and ongoing litigation

        was unnecessary and provoked by DCF's alleged emergency.

    d.  I was denied due process which could have prevented this if I could have been

        heard.

6. DCF failed to give Full Faith and Credit to the Montana Custody Order of 12/5/16 and its

Amended Orders 10/31/18 and 3/21/19, and instead, applied their own misinterpretations and

acting on them.

a) Z.N. and I were victims of not being able to exercise our Court granted rights to spend time together which are Federally protected, Constitutionally protected rights. The Commonwealth also provides similar protections.

b) DCF did so willfully and upon receiving clarification attempts from me at the 8/30/19 investigative interview, DCF continued with these allegations in their report to the Court. Defendants interfered, oppressed, and succeeded in severing our rights and relationship for 395 days and it was 418 days total from the time DCF seized Z.N. until we saw each other again.

c) The Defendants accomplished this by force, making 23 phone calls and going well above the call of duty and exceeded their own rights according to DCF Policy, which inevitably resulted in a Fair Hearing and DCF reversal. They fabricated information to the DA and had a No Contact Order served with State Police present at the airport.

d) In DCF's record it is recorded they did so willfully, knowingly, and had verified through both Montana and Massachusetts Court that this was an 'attorney' issue and that no Court Order was made on August 22nd and no future hearing was pending. They were told by Newton PD there was nothing they could do. DCF did not stop there. Despite what they were told, they still escalated Z.N.s case to an "Emergency Response" and then fabricated information to the District Attorney.

e) Thus, this lengthy deprivation and unreasonable loss of rights was avoidable if due process and Full Faith and Credit had been given.

7. As soon as I reported to DCF that Z.N. was speaking about sexual abuse her Father began refusing me parent time, filed a motion with the Court seeking supervised visits for me and DCF Brian Guzzi was the one who emailed the Father telling him it was up to him if he wanted me to have supervised visits he could file with the Court requesting this himself.  DCF had screened out the child abuse report I made,  even setting aside that my concern was genuine, and setting aside that DCF was the proper recipient of such concerns, my  reporting what Z.N. was speaking about did not rise to the level of needing supervised visits or DCF would have issued it.  They did not.

    a.   On 8/23/19 I had parent time for the first time in 70 days after the unlawful denials of Z.N.s Father all Summer.

    b.   DCF received a report from the Father that I took off unsupervised with Z.N.. DCF also called the MA Clerk of Court to see if an order had been issued and were told that it had not and that no future court hearing was pending.  This did not arise to the level of Immediate or imminent harm to Zoelle, are not extraordinary circumstances, and do not pass the threshold allowing Massachusetts to exercise emergency jurisdiction under the PKPA and c.209B.

    c.   DCF willfully deceived the D.A just after learning that no supervised visits were ordered, defendants fabricated stating that I had taken off 'unsupervised".

no right to do so.  I was able to leave peacefully with Z.N. that evening at the

Library in the presence of Watertown P.D.  The next day, DCF made 23 phone

calls to try and stop my visit.  They were told by Newton Police there was nothing

they could do.

    a.  As I later noted in their record: DCF went above and beyond their

        duties and continued making calls and although they were told by

        both Montana and Massachusetts Court Clerks that no order was

        issued, no future hearing was scheduled, and this was an issue for

        an attorney, DCF intake worker Brian Guzzi escalated it to an

        "Emergency Response" within a short time of learning this.  A

        DCF supervisor meeting was held, it is unclear who told the DA

        that Montana was issuing a warrant for my arrest but it is very

        clear this was not what Montana had said, in fact no such warrant

        ever was made nor served.  DCF also told the D.A. that I took off

        with my child "unsupervised" while DCF had just confirmed with

        the Court that no such order was made.

    b.  Ms. Greenaway had willfully rejected the proof I tried to offer and

        proceeded to make her report to the Court substantiating neglect

        anyway.

    c.  She did so willfully, while having received my information and

        hearing about other evidence available and rejecting it.

    d.  DCF deceived the DA to interfere with my parent time and my

        and Z.N. 's right to be together without unnecessary government

17

interference. It appears it was a joint effort by multiple DCF

employees, however Ms. Greenaway had the opportunity to accept

evidence and facts but rejected or ignored them. This led to a very

lengthy unjust and unnecessary separation and long term emotional

distress for both Z.N. and I.  Our rights to be free from this

harassment and deprivation of our rights, and our right to due

process are protected in the Constitution, Massachusetts Civil

Rights.

8. I sat at the airport after Z.N. was seized by DCF for over 3 hours in shock.  This was

the most shocking event in my lifetime and I did not know how to cope with such shock

or what to do next.   I had missed the flight home to DCF's interference and had to make

accommodations to stay in Massachusetts. I had to plan and strategize what needed to

happen next and quickly filed Court Documents.  I could not afford a 7ths Attorney at

this point, and our Supreme Court of MT case was still in progress.  I was financially and

emotionally devastated.  I contacted DCF to see if I could provide the proof to them they

refused at airport 8/23/19 and other case details about Z.N.s Father denying my parent

time for approx 70 days immediately preceding the No Contact Order.  DCF failed to

communicate with me until the end of the week when Cryselle Greenaway, DCF

Investigator  met with me August 30, 2019.  I Incurred a week of missed work, added

travel and an unexpected week stay in MA and emotional distress. Upon meeting with

Ms. Greenaway she refused most of the evidence I attempted to give her including my

Voluntary Mental Health Assessment performed by a Licensed Mental Health

Professional May 2019 which concluded no mental illness and no followup required.

d. Defendants interfered with my rights soon after obtaining a No
Contact Order with the information they misrepresented to the DA.
They did so willfully and with force of a Court Order.

8. During the Investigative Interview with DCF Cryselle Greenaway I explained

to her the following willful infliction of emotional harm that Z.N.s Father had

caused immediately prior to DCF's seizure of Z.N. at Airport on 8/23/19. I

explained: The Father had retaliated for my reporting child abuse (which was not

investigated) June 2019. That was the last time he allowed me to see Z.N.

Immediately after, from around June 13, 2019 until August 22, 2019, he denied

parent time unlawfully. I relayed to Ms. Greenaway stated that he texted he

would 'wait to see what the Judge decides" at the Court hearing August 22nd and

would 'comply' with what the Judge decides. I emailed these texts to Ms.

Greenaway. She disregarded everything I gave her that day and most of which

refused to take, stating I could take it up with the Court. I explained to her that I

was not given supervised visits at that hearing and therefore, per the Father's

agreement in advance, I picked Z.N. up and expected unsupervised visits. Last

minute, after the Court hearing when no supervised visits were issued, the Father

texted me that he would 'supervise' me with Z.N. I was to have 8 days of parent

time and fly home with her to Utah but the Father announced he insisted on

continuing to act against Court Orders. To keep the peace I contacted Watertown

PD and explained the Father unlawfully denied parent time for nearly 70 days

and that he may create problems insisting he supervise me and Z.N. while he has

Ms. Greenaway challenged this by saying that is an issue for the Court. However, DCF were the ones alleging 'severe mental illness' while not having evidence that it was true and while refusing any evidence I provided that it wasn't true. This was a larger part of DCF's reasoning for deprivation and interference of my and Z.N. 's rights to be together without unlawful government involvement. As a direct result of Ms. Greenaway acting against the Color of the Law, abusing her powerful position, our relationship was severed, impacted in emotionally distressing ways and continues to negatively impact my Custody and our relationship.

    a.   My rights to a fair process were denied, granted by the Constitution and

    b.   With force of a Court Order and D.A. and State Police involvement.

    c.   Defendants did so willfully

9. No Case plan nor recommendations were provided by DCF at Z.N. 's case closure December 2019. Citation: Pol. & Proc. Man., Ch. 3, § 3 The Department of Child Safety (DCS) shall facilitate the development of an individualized, family-centered, written case plan for every child, youth, and family receiving ongoing services from the department. The department shall conduct a case plan staffing and create the initial written case plan within 60 days. Z.N.'s Case was closed around December 10th-11th 2019 and without any case plan. DCF did not make Conclusions with recommendations for parent time for me and Z.N.. Absent any clear concern for safety, DCF closed their case without a case plan nor recommendations. Even in the worst of circumstances, had this involved a DCF removal, a case plan for reunification is required by 42 USC 67 (a)(15). DCF did not

provide an "action plan" to outline tasks that I would need to complete nor any behavioral related recommendations required in order to close Z.N.'s case in December 2019. In a case where there are concerns for the fitness of a parent or safety of a child, this is normally done and then failure to comply can lead to loss of parental rights to some degree. DCF provided no opportunity nor any concerns, recommendations nor referral to receive a mental health assessment or counseling or anything of the sort.

a. Z.N. and I were denied a fair DCF process and our due process rights and Civil Rights protected by the Constitution were violated.

b. Defendants willfully did so.

c. Defendants continued after case closure to interfere with our protected rights.

10. On 12/23/19 Judge Burchill of the Middlesex Family Probate Court was presiding and waited for DCF to update her on what their involvement was with Z.N.s case before she could consider my request to speak with and see Z.N. Although DCF had closed the case more than 10 days prior to this Court Date, they made themselves unavailable as we waited 8:30am - 4:30pm for a phone call from DCF to the Judge. I had flown to appear in person for this hearing which was rescheduled by the Judge after waiting all day for DCF who never responded to the Court. Another month passed, another Christmas, Z.N.s 5th Birthday, and New Years and finally January 21 or 22nd, 2020 we came before Judge Burchill again as she waited for DCF to call her back and update her. DCF told the Judge that I was suffering from a disorder and committed Medical Child Abuse and the Judge refused to allow any visits nor phone calls as a result. This was the breaking point for me emotionally. On top of the already unjust false accusations I then faced an entirely worse and more outlandish false allegation by DCF. There was no opportunity

for me to be heard on the matter as the Judge quickly ended the session. I suffered tremendous emotional pain and distress being placed under additional false allegations by such a powerful and persuasive agency such as DCF and now having additional burden of proof to the Court to meet before I could hope to be reunited with my daughter or even speak to her. This weight was so heavy and burdensome I missed a lot of work due to the emotional distress. That trip to MA for that Court hearing was also my 5th round trip to Boston, MA with an attempt to see my daughter and attend Court. Each of these 5 times, I ended up leaving Boston without having been able to exercise parent time. At this time I had also already had a Fair Hearing with DCF Arlington November 2019 and was awaiting a positive outcome of that decision.

    a.   Z.N. and my rights to be together and our due process rights were further violated on this day.

    b.   Defendants had already closed their case and without any case action plan nor recommendations and someone from DCF could have replied this to the Court that day but did not. I also sent emails to Mr. Grady and his Supervisor pleading to get a reply for the Court and no response.

    c.   It appears this was a willful interference on DCF's behalf to fail to notify the Court of the case closure and apparent lack of concerns.

11. May 2020 the decision came through that DCF should Reverse their neglect allegation and it became finalized approx 6/15/2020. Not at any point has any DCF Arlington or DCFS UT agency ever concluded Medical Child Abuse. However on approx 1/22/20 at Court Judge Burchill again awaited DCF's response as to the Status of Z.N.s case. DCF replied that Medical child abuse was involved and therefore Judge Burchill refused to allow me to speak or see Z.N. This was not true, in fact Utah DCFS found that Z.N. was under Doctor Orders for medical

monitoring of her Urine for her safety and health and specifically this was not Medical Child

Abuse. DCF fabricated information to the Court. Even the Father, at Court, stated this was the

first time he had heard of this. It was also the first time I had heard of this allegation. This is a

complicated case with a very large safety concern which was concluded by DCFS UT that I was

not a suspect in. The Father was not exonerated, Child endangerment was substantiated and

DCF Arlington continues to twist facts to place me on the hook of being blamed. DCFS UT

investigated this already and concluded I was not around Z.N. before, during, after her exposure.

All caregivers were interviewed and those conclusions should be honored by DCF Arlington and

they have not been. This places Z.N.s Health and Safety in jeopardy and accuses the wrong

parent. DCF Arlington also claims that no endangerment occurred, which is false. Child

endangerment was substantiated at the case closure 3/28/19 (Which closed a week after the

Montana Judge had made his physical change of custody without evidence). DCF was told and

made aware of the above in multiple ways, yet they refused to acknowledge the actual child

safety issue and conclusions made by Utah.

    a.   Z.N. and I have been denied due process, been unfairly denied our right to be together

        and have repeatedly had those rights interfered with by DCF. On this occasion it created

        an extremely lengthy unnecessary separation without a chance to even speak on the

        phone to Z.N. This went on for another 8 months before the Court recognized "DCF

        Mistakes" in its Order (9/17/20)

    b.   DCF did so willfully, knowingly and had many opportunities to review the UT DCFS

        actual case conclusions.

    c.   The force was DCF's powerful position and acting against the Color of the Law and

        misrepresenting to the Judge.

a) This Court has Jurisdiction over the defendants acting and the incident occurred in this District. Due process was denied and interfered with and threatened on multiple occasions. Full Faith and Credit was not given to Utah DCFS Case Conclusions.

b) We are entitled to relief given that due process was again denied to Z.N. and I on 12/23/19 and 1/2020 (21st or 22nd).   Further unnecessary separation occurred as a result of both of these Court dates described above.  Not so much as a phone call was allowed over the Holidays and Z.N.s 5th Birthday.  It had already been a substantially long period of No Contact and facing an even longer period of time was unbearable, emotionally distressing and grievous.   We experienced additional unwarranted deprivation of the right to be together without unlawful government interference due to  DCF Arlington's  new misrepresented allegations.  DCF abused their authority, acting against the Color of the Law to deprive us of our right to be together.

12. Ours was a seizure and not a removal yet no plan for reunification was ever implemented by DCF. Upon a DCF Fair Hearing and Reversal (which was finalized June 2020) DCF continued to unlawfully act against the Color of the Law by stating there was any 'danger' while having no facts to support that and while having already Reversed their own 'neglect' findings. This has and continues to deprive Z.N. and I of our right to be together without government interference. This unreasonable loss of rights has persisted with each time DCF caseworker testifies and/or speaks to a Court official. On approx 9/17/20 while under oath Mr. Steven Grady testified I was a danger and when asked if he was aware of DCF's Reversal of "neglect" he was unaware of this.

    a. Without reason and without a case action plan and without due process our rights were interfered with and deprived. These rights are protected in the US Constitution and MA Constitution.

    b. Defendants willfully did so

    c. We were at the mercy of DCF authority and therefore forced to accept the treatment they provided.

13. Mr. Steven Grady further testified that I was a danger, which has not ever been any DCF/DCFS conclusion. On these dates ( 12/3/19, 1/2020, 9/2020, Spring/approx March 2022) he spoke to the Court directly, or testified, or interviewed with Court Officials explaining his opinions including that I am a 'danger', which were not DCF MA nor DCFS UT conclusions or opinions:

unaware of its department's decision of "Reversal",

a. Despite the Defendants making a Reversal of their neglect allegation and never alleging endangerment, I was continually called a 'danger' and referred to as 'dangerous' and many references to 'danger' were provided by Mr. Grady to the Court and Court officials which directly and indirectly damaged due process rights, and our right to be together, these rights are protected by the Constitution and MA Constitution.

b. Defendant did so willfully.

c. The force involved is at the mercy of DCF's decisions, authority, even while acting against the Color of the Law, and the Court has given merit to what they have said, not having seen the facts for themselves.

14. By the time the Court gathered facts at a hearing held after the DCF Reversal, the Court issued an order to resume parent time. The Order to " resume and strengthen the relationship between Mother and Child" was issued 9/17/20, when the Court made its 'initial steps' to restore parent time after DCF mistakes. The order acknowledges "DCF mistakes" and the "misinterpretation of another states order. This was after a DCF Fair Hearing conclusion was made final around 6/15/20. By the time we were able to get into Court to be heard it was another 3 months. The Court issued its order for me to provide 14 days notice of my intended parent time to the Father.

a. Z.N. and I were needlessly separated for a very long duration, deprived of our Civil Rights, Due Process and parent-child relationship, these rights are protected by the Constitution and MA Constitution.

b. Defendants willfully interfered and denied our rights multiple times

c.  The force involved is DCF's authority, acting against the Color of the Law. The Court finally unraveled the facts and made attempts to restore parent time and reunify Z.N and I.

d.  Under both the Fifth and Fourteenth Amendments to the U.S. Constitution, neither the federal government nor state governments may deprive any person "of life, liberty, or property without due process of law. I was deprived of my parental rights when Z.N. was seized on 8/23/19 and deprived of my Court granted rights as well as due process. The 8th Article of the Bill of Rights states no one shall be deprived of life, liberty, property without Due Process of Law.

15.  Upon DCF willful falsification of information to the District Attorney, regarding taking off with Z.N. "unsupervised" and false claims against my mental health, a No Contact Order was requested by the D.A. No Contact was disproportionate to DCF's 'neglect' allegation which appears due to DCF's fabricated information to the D.A. These fabrications are documented in DCF's own records.

a.  My and Z.N. were exercising our freedoms and rights to be together which are protected by the Constitution and the Massachusetts Constitution. We have a right also to be free from this type of threat and oppression, and abuse of power by Government officials such as DCF.

b.  DCF used their powerful position to unnecessarily interfere with, threaten and injure our rights, and they did so willfully. This protection is granted in the Constitution and Title 18 USC Sec 242 Deprivation of rights under the Color of the Law states "Whoever, under color of any law, statute, ordinance, regulation,

or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both;"

c. This unreasonable loss of rights and long term suffering was avoidable and Z.N. and I are entitled to relief. Defendants interfered willfully damaging my and Z.N.'s rights for an unreasonably long period of time (418 days, August 23, 2019 - October 29, 2020, No Contact for all but 16 of those days were we were allowed facetime Oct 14 - Oct 29th)

16. DCF falsified information in both their records and to the D.A. that I am 'severely mentally ill'. DCF had already offered my Voluntary Mental Health Assessment which shows no mental illness exists. Despite no documentation of having a mental illness and in the absence of the Assessment I had offered them as proof, they alleged anyway that I was mentally ill. These reasonably calculated deliberate efforts raise risk of criminal liability and go above and beyond any protection measures available to DCF.

a. I have a right to be free from this type of threat to my parents rights and oppression, and abuse of power by Government officials such as DCF. I have a right to due process and a fair process, rights which are protected in the US Constitution and MA Constitution.

b. Defendants violated these rights and on multiple occasions over a long period of time and they did so knowingly.

27

c. The threat and force is DCF's authority and influence with the Court, a parent's rights and a parent-child relationship, their lack of integrity and choice to fabricate a non-existent mental illness was very threatening, and still is.

17. Z.N. and I endured the Ongoing Court hearings and lengthy investigations could have all been avoided if due process was allowed.  Separation,  suffering, irreparable harm, irreplaceable time with my child lost, irreplaceable childhood memories permeated with emotional distress for Z.N., loss of consortium,  legal and other costs involved in these lengthy investigations and hearings were all unnecessary.

a. Defendants did so willfully, knowingly and unlawfully involved themselves and the Court in our parent-child relationship and rights.

b. The threat is the length of time this has already taken, the length of time it will still take and that DCF refuses to report to the Court and its officials with truth and integrity, which threatens our long term parent -child relationship.  DCF has the authority and influence to do so and this is the force involved.

18. DCF Arlington is continuing with their allegations of 'severe mental illness' and Medical Child Abuse (which was not Utah DCFS's Conclusion.)  This is still negatively impacting our Court case, my custody rights, parent rights, Z.N.'s rights to be with me and without unnecessary Government interference.   In addition DCF's re-concluding another State's DCFS Investigation and ascribing "Medical Child Abuse" occurred violates my rights and impacts Z.N.s right's for medical care ordered by her Doctor.  Utah DCFS verified in their investigation that the medical testing was ordered by a Doctor for the safety and well being and monitoring of Z.N. March 2019. DCF Arlington Area has used this false allegation against me multiple times 1/20200 on or about the 21st or 22nd in Court and 9/2020 on or around the 17th and in the Interview with

Z.N.s Guardian Ad Litem it again negatively impacted our rights as it was documented by the GAL in the report that it was concluded when it was actually not concluded by Utah. I respectfully request an Injunction or Order of Restraint against DCF Arlington from falsely representing the Conclusion of another State's DCFS investigation Conclusions. If allowed to continue falsely reporting to the Massachusetts Court and its Officials this will inevitably damage my parent rights and relationship with Z.N. indefinitely. I respectfully seek what relief this Court deems appropriate.

    a.  Our right to be together without unnecessary government involvement and interference is protected by the Constitution and MA Constitution.

    b.  Defendants willfully continue to violate this right by their allegations which have no evidence, and in fact are incorrect by UT DCFS Conclusions.

    c.  The threat has been the twist of case facts, while DCF had omitted the Conclusion from Utah's investigation, not allowing the truth to be known. This threat continues to impact Z.N. health and safety, my right to be free of false allegations and oppression regarding my mental health, and threatens our parent-child relationship.

19. Z.N. was recently denied DCF Services 6/2022, when 5 children in the same home were removed by DCF Emergency Removal, around midnight on approx. 5/21/21, and Z.N. was left behind in the perpetrators care. DCF was told I was not involved in Z.N.s life, however I had flown to MA to see her twice that month. Despite the facts below, DCF refused to open an investigation for Z.N. and she is still with the perpetrator, her Father, from the abuse incidents prompting that Emergency DCF removal. It appears DCF will continue to fail Z.N. unless compelled to by a Court action. Z.N.'s Civil Rights have been and continue to be violated by

Defendants.   (In attempt to avoid redundancy, further details are contained within the Injury Section)

a.   Z.N. was denied a DCF investigation, under the circumstances this is unconscionable—and a violation of DCF's duties. Z.N. was left in the Father's care, the alleged perpetrator

b.   The Defendants were aware of the emergency yet failed to provide an investigation, I later contacted DCF requesting an investigation, letting them know I was actively participating in Z.N.s life yet they failed to open a case.

  i.   I submitted a complaint and subsequent request to open a case with the DCF agent in charge of reviews and Z.N. was still denied a DCF investigation. DCF was aware of the circumstances surrounding the removal but willfully refused to open an investigation.

  ii.   The Middlesex Juvenile Court issued its order for Conditional Custody contingent upon Mr. Emigdio Gonzalez-Niquet, Father of Z.N. to have no contact with the 5 children removed from his home 5/21/21.

  iii.   This order was issued 6/2022

  iv.   DCF Arlington was made aware of this and of DCF Hyde Park's conclusions and case action plan supporting that Emidgio was the perpetrator.  Yet, Z.N. was not given an investigation by DCF.

  v.   Z.N.s rights continue to be ignored, interfered with and denied and without further involvement by authorities even the protections granted to her in the US Constitution and MA Constitution have not been respected.

21. Most recently 4/13/22, 6/15/22, and 6/24/22 and presently realizing all efforts with a GAL investigation failed given DCF has enough authority to sway an investigation that will impact future Custody.

    a.   Z.N. and I continue to be subject to DCF's unfair treatment, and it has continued. This has been and will continue to affect our parent -child relationship, which is protected by the US Constitution and MA Constitution.

    b.   Defendants have done so knowingly and willfully.

    c.   The threat is that DCF continues to act under the Color of the Law making misrepresentations of truth and that long term impact has and will likely continue to negatively impact my and Z.N.s rights and relationship for a long time to come without Court involvement.

## V. Injuries

Z.N. and I have suffered an overwhelming amount of emotional distress from the violations of our Civil Rights and the ongoing long term suffering resulting from this unreasonable deprivation of rights, due process, and willful actions of DCF causing a severing of our bond and relationship for 418 days unnecessarily. The ongoing damages since that time have been enormous as well and continue to impact Z.N.s and my rights.

1) This was all avoidable but willfully done by Defendants and while knowing

2) Due process was denied Z.N. and I multiple times over the span of almost 3 years

3) DCF's continued actions against the Color of the Law on multiple dates mentioned herein have delayed justice and our Court case and provided much confusion.

vi.    Defendants knowingly and willfully have denied and interfered with Z.N.s rights
       and

vii.   The threat is DCF's continued denials and interference and Z.N. remains without
       investigations which reasonably were warranted and necessary and remains
       without her legal rights  honored and protected.

20.  Unnecessary deprivation of rights was due to fabrications made by DCF employees to the
District Attorney. This equates to reckless indifference to federally protected rights. This
occurred while acting under the Color of the Law.
 has done so "with malice or with reckless indifference to the federally protected rights of an
aggrieved individual." Rev. Stat. §1977, as amended, 42 U.S.C. § 1981a(b)(1).

Z.N. and I have been denied of our right to be together and enormous unnecessary
separation, deprivation,  suffering, emotional distress has occurred.

a.    State Laws, Federal Laws, Constitutional rights all being violated by DCF,  a
      powerful entity designed to ensure her  safety and protection,  did the opposite
      and caused irreparable emotional harm, suffering and distress to Z.N.

b.    Defendants deprived Z.N. of investigations, due process, parent-child
      relationship, right to be free from unreasonable seizure, the right to have her
      safety ensured through proper investigations by DCF

c.    In this willful deprivation unreasonable long term suffering occurred,

4) The continued refusal of DCF to acknowledge Z.N. 's safety and well being according to Utah Case Conclusions of 3/28/19, (cw. Sarah Wright, Utah DCFS)

     a. DCF's refusal to honor another State's conclusion and instead,  act against the Color of the Law, abusing their authority repeatedly and  misrepresenting that Medical Child Abuse occurred has caused enormous distress, loss of peace of mind, and with each time they echo this to Court and Court officials it becomes more heavy and difficult to overcome.

      d.   The Truth is being buried by DCF's misrepresentation and this feels like the heaviest burden to bear and burden of proof I cannot afford legal assistance to help rectify.

      e.   The overwhelm causes  anxiety and emotional distress

      f.   Defendants did so knowingly and willfully.

5) DCF Arlington refusal to report actual case conclusions and facts surrounding Z.N.s safety while misrepresenting untrue statements to The Court and Court officials.

     a. Most recently March 2022 when Mr. Grady interviewed with Z.N.'s GAL and once again misrepresented statements which will impact future Custody.

      g.   After a year long investigation, the lengthy and costly investigation was tainted by Mr. Grady's misrepresentation of facts and biased opinions and DCF's false record which remains uncorrected.

      h.   This has deprived Z.N. of her fundamental right to Justice and a fair investigation.

6) Z.N. has been deprived of fair investigations, services of protection by DCF, a Government agency employed to do so.

      a.   5/21/21, around midnight DCF made an Emergency Removal of 5 children in her home while she was not entitled to an investigation by DCF determination.  Z.N. has been

deprived of her Civil Rights, due process, DCF investigations multiple times, this was the most recent denial of services.

    i.    This removal was made with armed officers and DCF raiding the home while the kids slept and I was told by the Father's girlfriend that DCF kicked the door in.

    i.    Upon the Emergency Removal of Z.N.'s Father's girlfriend's 5 children from his home, Z.N. was left in the Father's care and without a DCF investigation for her.

    k.    Z.N. was denied a DCF investigation, under the circumstances this is unconscionable—and a violation of DCF's duties. Z.N. was left in the Father's care, the alleged perpetrator

    l.    The Defendants were aware of the emergency yet failed to provide an investigation, I later contacted DCF requesting an investigation, letting them know I was actively participating in Z.N.s life yet they failed to open a case.

    m.   I submitted a complaint and subsequent request to open a case with the DCF agent in charge of reviews and Z.N. was still denied a DCF investigation. DCF was aware of the circumstances surrounding the removal but willfully refused to open an investigation.

    n.    The Middlesex Juvenile Court

2.

    ii.    Conditional Custody would end and the 5 children would immediately be returned to State Custody.

    iii.   Meanwhile, DCF Arlington failed to be concerned and failed to open an investigation for Z.N.

iv.   DCF Arlington was made aware of DCF Hyde Park's Case Action plan for those children included that Z.N.'s Father not have any contact with them.  This was relayed to me by the girlfriend, Samantha,  who was very concerned for Z.N.'s safety with her Father. She relayed to me many safety concerns including: Z.N.s Father abused Samantha's Autistic young child and Z.N. was present when this occurred. Z.N.  was also present with multiple days that week of Police involvement for domestic disputes at the Father's address 227 Adams St. Newton, MA  02458. Samantha claimed Z.N. was in the next room when her Father would aggressively force Samantha to have intercourse. Samantha claimed the Father, Emigdio was taking Viagra and turned into a monster.  Samantha told me of some of the things Z.N. had told her about her Father inappropriately recording her private area.  This aligned with what Z.N. had told me previously, August 2019 but DCF failed to open an investigation when I reported it.  Instead, I was blamed for reporting, this is my Civil Right to pursue Justice, report child abuse and my rights are protected by the Constitution, although DCF has punished me for reporting by claiming I have reported in excess of 20 -30 times, when I have only ever made 4 reports to them, all of which they refused to investigate (5/6/19, 6/13/19, approx the week of 8/30/19, 5/2021 this recent Emergency)

v.    Z.N. has been deprived of her Civil Rights, due process, DCF investigations

7.  The suffering and emotional distress caused by DCF's inaction has been overwhelming and ongoing.  The concern is still present and will not rectify itself, despite my numerous emails to DCF Area Directors and Supervisors for their attention to these matters.

vi. I was alarmed and devastated when DCF Arlington failed to provide a DCF investigation for Z.N.  They screened out the case in June 2022.

vii. DCF Arlington is aware of the Juvenile Judge's decision and Order prohibiting Z.N.'s Father, perpetrator, from contacting those 5 children.

viii. DCF Arlington was also aware of  DCF Hyde Park's  51A and Case Action Plan which illustrates  Z.N.s Father was the cause of the Emergency Removal of those 5 children.

ix. Meanwhile, DCF Arlington failed to  acknowledge or at least provide Z.N. an investigation.

x. I tried multiple times to communicate my concerns of the facts I had seen and DCF refused to open a case.

xi. I reported to them also that the same month, May 2021 the Father had denied parent time twice and that he had denied parent time repeatedly upon the Court's Order to resume Parent time 9/17/20.  I explained his pattern of conduct once again, which was relayed to DCF 8/30/19 at the Investigation interview prior to their report to the Court that the Father, acting against Court Order, was refusing to provide parent time for 70 days.

xii. Although DCF has been well aware and informed, they have failed to provide DCF investigation or services to Z.N. to help prevent further willful emotional harm by her Father (which is Child Abuse by Massachusetts definition)

8) The willful refusal to provide Z.N. with these Constitutional rights repeatedly presents a pattern of conduct by DCF that has risen to levels where a Civil Suit is necessary to achieve relief

   a. Loss of Consortium during this process, loss of quality & nature of relationships with loved ones, additional loss of earning capacity, loss of enjoyment of life as I gather case facts, evidence, witnesses and all that a Civil Rights case requires to pursue.

9) The emotional distress for having to endure filing such Civil Rights suit to request DCF to do what they are employed to do

10) The emotional distress of having to digest these facts again for the purpose of attempting to achieve Justice for Z.N. and secure our basic fundamental rights has been overwhelming, burdensome, unnecessary and emotionally and psychologically distressing.

   a. I would have avoided all of this emotional and psychological stress and distress but in doing so, Z.N's future and our relationship will continue to be subject to DCF's refusal to recognize and honor our Civil Rights, Federal Rights and rights Protected by the MA Constitution.

   b. Several times throughout drafting this, I have had to take long breaks from re-digesting difficult case facts and memories and emotions.  While it is a harsh difficult process to endure, I have the future in mind for Z.N. and I value our relationship and future above my suffering and pain.

   c. Justice has not been available in our case, given all of the above,  and this filing is a necessary step to reinforce the existence and protection of our rights presently and in the future.

11) The Emergency Jurisdiction Massachusetts took based on DCF's "Emergency Response" was unnecessary and Financial injury occurred

     a. Flights for interstate court appearances to MA,

     b. Loss of earning due to Court preparation, pleadings, appearances,)

c. Legal expense and cost including Attorney fees.

12) The degree to which Z.N.s relationships were severed and her quality and nature of these

relationships over time not restored for long durations of interference by DCF and failed due

process.

a. Z.N.'s relationship with me (quality & nature of relationship has suffered long period of
time, nearly 3 years)

b. Z.N. endured many big childhood firsts without the support and loving pressnes of her
Mother, a right DCF did not have to interfere with, accidentally nor willfully and they
did so willfully. There are no words to describe the injustice Z.N. endured while being
forced to experience heavy emotions of emotional suffering, despair, overwhelmment,
confusion, anger, hurt, devastation, grief, and distress this reasonably caused her at age 4
when it first occurred.

c. Not an hour went by where I wasn't missing our bond that was interrupted, severed for
**418 days** by DCF's willful actions.

d. This should have been easily rectified immediately upon due process but was not.

e. This deprivation never should have happened, except DCF willfully impacted her rights,
emotional well being and relationship with me and her siblings, Grandparents & extended
family.

f. ,Z.N.s relationship with her siblings, Grandparents, and extended family suffered as a
result of the harm caused by Defendants willful acts.

g. Z.N's first days of Preschool & Kindergarten were faced without Mama. Birthday's,
Holidays, Special occasions, firsts and monumental moments were all missed and she
experienced these childhood memories without her Mother and family. There is no way

to restore this injury. This type of injury can not be quantified as a value dollar amount, the emotional pain of missing all of these moments cannot be quantified by a dollar amount.

h. There are no photographs to preserve these memories that were never made, and were deprived unnecessarily. There is no way to regain these memories.

i. These are all irreplaceable memories but were denied, deprived, and due process denials and interference prolonged the suffering and deprivation.

j. There were also many difficult normal life experiences Z.N. experienced while I was not allowed to be there for her to comfort, reassure her, provide parental support and allow her to feel my presence in her life to help her cope. She lost ½ of her Permanent front tooth, which had to be restored with dental work. She lost that cap and had to endure additional dental work on the damaged tooth and there are many other moments of hurt, normal childhood injuries, pains, sickness, and sadness that I was unreasonably denied to be there for her.

k. Z.N.'s suffering of loss of this care, comfort, quality and nature of relationship with her Mother due to DCF's willful interference in our rights was unnecessary.

l. It is more than unfortunate, it is devastating and irreparable with life-long lasting psychological and emotional impacts to Z.N.

13) Time cannot be replaced, nor can early childhood, this ongoing damage that is still accruing and occurring by DCF has prolonged this suffering now for nearly 3 years.

a. This unreasonable loss of quality and nature of early childhood bonding and

b. being able to have a normal parent child relationship was avoidable.

c. The damage is irreparable and

    d.   time is irreplaceable and

    e.   core memories will always remain filled with the shock and

    f.    emotional suffering that occurred.

    g.  DCF had many opportunities to relay truth to the Court and Court officials and opportunities to provide adequate investigation services to Z.N. and failed. Each time facing Court, hoping and losing hope because DCF Failed to acknowledge facts again produced an excessive and unfair amount of despair and helplessness.

14)  Long term agony, worry, stress, anxiety, overwhelm, emotional distress, Justice, due process, rights were all impaired by the willful actions of Defendants.

    a.   The injuries caused by Defendants began 8/23/19 and  have been continuing for nearly 3 years with each time DCF echoes the misrepresentations of another State's conclusion.

    b.   This has placed Z.N.'s safety and well being in jeopardy

    c.   and that has caused an insurmountable amount of emotional distress for me.

    d.   Being falsely accused of MCA and having my rights negatively impacted for so long is incredibly damaging and DCF did so knowingly while having the actual case conclusion from DCFS UT.

    e.   The medical monitoring was necessary and Ordered by Z.N. 's Pediatrician.  Z.N. has been denied medical monitoring since DCF MA was involved.

    f.   MCA is a crime and a serious issue, if it truly had been concluded by DCFS UT a case plan would have reflected Action Plan, recommendations or anything.  It is clear to see that these were not the conclusions of Utah DCFS and that upon case

closure 3/28/19 the Father was emailed stating there was a 48 Hour Safety Plan in place. (which briefly was noted by Sarah Wright, DCFS UT, cw in the record) This was investigated, concluded that it was medically necessary and Orders issued by Z.N.s pediatrician. DCF acting against the Color of the Law to claim anything other than actual case conclusions by another state borders criminal risk and has yet to be rectified within their record. The damages for this are ongoing, there is no end in sight for these malicious false allegations by DCF MA

g. The agony, extreme overwhelm, emotional distress and helpless feelings have been long term, unnecessary and caused by Defendant's willful actions and their refusal to correct their actions by multiple requests I have made for them to acknowledge the actual case conclusions.

h. This places Zoelle's Health and Safety in permanent risk if they are allowed to act against the Color of the Law without consequence.

i. The emotional distress, grief, overwhelm are not likely to end unless DCF is held accountable.

j. MCA is a horrific crime, I was not accused of this, yet DCF Arlington continues to allege this.

    i. This has and continues to deprive Z.N. and I of our basic rights, parent-child relationship without unnecessary government involvement, Civil Rights, which are protected rights.

k. The overwhelm and emotional distress from:

    i. Being forced under these hefty misplaced allegations.

41

ii. Burden of having long term suffering

iii. The overwhelm and feeling of helplessness caused by DCF's abuse of power and deprivation of our rights except to file a Civil Suit, which adds further burden and emotional distress.

iv. Feelings of overwhelm and helplessness from receiving unfair treatment and unfair process from DCF, a powerful and influential part of the Justice system.

The long term endurance and suffering that took place also damaged relationships around me as I was in heavy amounts of grief and reluctant to spend time with loved ones who I did not want to see me in enormous emotional pain and grief, as they too were suffering emotionally from the devastating separation from their sister/grandchild. I was offered no relief from this grief each time I flew to MA for Court multiple times and DCF interfered further, depriving us for longer durations unnecessarily. The hope of having the facts heard and being able to see my daughter was quickly shot down upon DCF interference with the facts. Had they represented the facts, I would have been free from their misuse of power and deprivation of rights. Z.N. and I would not have been separated nor forced to remain separated for 418 days until their "mistakes" were recognized by the Court (J.McSweeny) (9/17/20 Order). The enormous grief, emotional distress and shock for both Z.N. and I are unimaginable and the damage is irreparable. All of this suffering was avoidable and Z.N.s core childhood memories will forever be negatively and

traumatically impacted by the emotional distress and shock that occurred as a result of mistaken deprivation of our rights to be together.

The Constitution also protects "the individual interest in avoiding disclosure of personal matters." Federal Courts (and State Courts), under Griswold can protect, under the "life, liberty and pursuit of happiness" phrase of the Declaration of Independence, the right of a man to enjoy the mutual care, company, love and affection of his children, and this cannot be taken away from him without due process of law. There is a family right to privacy which the state cannot invade or it becomes actionable for civil rights damages. **Griswold v. Connecticut,** 381 US 479, (1965).

## VI. RELIEF

1. I respectfully request relief for an Attorney to represent in this matter should the Court deem it proper. This already high profile custody case was with the Supreme Court of Montana for Jurisdiction issues when DCF overreacted and willfully interfered with our rights, creating an "Emergency" that did not exist, in which Massachusetts then took Emergency Jurisdiction. I am financially depleted after having had 7 Attorneys between the 3 States and loss of earning capacity given the amount of appearances in 3 different states. The UCCJEA and PKPA Laws were designed to prevent this scenario. I cannot afford but undoubtedly need an Attorney to represent in this Civil Rights matter. I respectfully thank the Court for its consideration in this request for relief.

2. I seek relief to include travel costs for these Court appearances, Legal Costs, Attorney fees, , loss of income and earning capacity, unreasonable pain and suffering. loss of

consortium,  for deprivation of rights and due process and while acting against the Color

of the Law.  The Court appearances were both  caused by DCF's unlawful interference in

my parents rights.  On these dates there was an opportunity for me to be heard and the

Judge wanted to hear from DCF first.  DCF's continued interference by  1)failure to

contact the Court 12/23/19 all day, forcing a rescheduled Court hearing for around

1/22/20 prolonging the separation for 8 more months, continual interference in due

process and our rights which are protected under the US Constitution and Massachusetts

Constitution on these dates  (8/23/19, 8/30/19, 12/3/19, 12/23/19, 1/22/20, 9/17/20,

5/2021, 6/14/21, 3/2022, 6/24/22)

3.  Z.N. and my long term suffering, separation, emotional distress because of due process

denials, unlawful and unnecessary deprivation of rights and unreasonable loss of rights

has caused an overwhelming amount of grief and emotional distress for both Z.N. and I.

respectfully request costs of present and future therapy for  both Z.N. and I individually

and family therapy we  will need as a result.. The unreasonable deprivation of rights and

long term suffering would reasonably cause anyone emotional distress and especially at

Z.N.s age.

4.  I respectfully request relief in the form of actual damages, compensatory damages, and

punitive damages in the amount of $27,180,000.

5. DCF's conduct was intentional and unreasonable suffering and loss occurred, should this Court determine DCF's conduct is considered intentional or willful violation of our Civil Rights and Due Process, I request relief as provided

under the terms of the Civil Rights Act of 1991 (1991 Act), 105 Stat. 1071, punitive damages are available in claims under Title VII of the Civil Rights Act of 1964 (Title VII), 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq. (1994 ed. and Supp. III)

## VI. Injunctive Relief Requested

Since its Order 9/17/20 recognizing "DCF's mistakes" and the "misinterpretation of another State's Order", the Middlesex Family Probate Court has only made those 'initial steps' and the Guardian Ad Litem lengthy investigation delayed our case substantially. Despite my request in writing, DCF says they cannot correct their record, nor are they willing to rectify it by acknowledging DCFS Utah's case conclusions.  DCF Arlington is continuing with their allegations of 'severe mental illness' and Medical Child Abuse (which was not Utah DCFS's Conclusion.) This is still negatively impacting our Court case, my custody rights, parent rights, Z.N.'s rights to be with me and without unnecessary Government interference.   In addition DCF's re-concluding another State's DCFS Investigation and ascribing "Medical Child Abuse" occurred violates my rights and impacts Z.N.s right's for medical care ordered by her Doctor. Utah DCFS verified in their investigation that the medical testing was ordered by a Doctor for the safety and well being and monitoring of Z.N. March 2019. DCF Arlington Area has used this false allegation against me multiple times 1/20200 on or about the 21st or 22nd in Court and 9/2020 on or around the 17th and in the Interview with Z.N.s Guardian Ad Litem it again

negatively impacted our rights as it was documented by the GAL in the report that it was

concluded when it was actually not concluded by Utah. I respectfully request an Injunction or

Order of Restraint against DCF Arlington from falsely representing the Conclusion of another

State's DCFS investigation Conclusions. If allowed to continue falsely reporting to the

Massachusetts Court and its Officials this will inevitably damage my parent rights and

relationship with Z.N. indefinitely. Arlington Office Area Director had already emailed me

around April 2021 to let me know Mr. Grady would not be permitted to speak on behalf of Z.N.s

case but that I could not be notified of any further disciplinary action the Department would take.

Since that time, however, a year later, Mr. Grady made misrepresentations to Z.N.s GAL in an

interview around March 2022 and to the Newton District Court 6/24/22I respectfully seek what

relief this Court deems appropriate. I respectfully request a hearing on this matter.

## VII.   REQUEST FOR JURY TRIAL

We respectfully request a Jury Trial and preserve our rights granted in the Seventh

Amendment of the Constitution to do so.


## VIII.   CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,
and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass,
cause
unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law: (3) the factual contentions
have
evidentiary support or, if specifically so identified, will likely have evidentiary support after a
reasonable
opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.

**A.**     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case−related papers

may be

served. I understand that my failure to keep a current address on file with the Clerk's Office

may result

in the dismissal of my case.

Date of signing:         8/16/22

Signature of Plaintiff
Printed Name of Plaintiff          Annie Niquet